RECORD NO. 16-1697

In The

# United States Court of Appeals

## For The Fourth Circuit

**TRUMP TIGHT, LLC, d/b/a Trump Restaurant, and Lounge,**

*Plaintiff – Appellant,*

**v.**

**RAYMOND R. BELL; VINCENT B. GIVENS,**

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND

———————————

**BRIEF OF APPELLEES**

———————————

Carlene Booth Johnson
PERRY LAW FIRM
  A PROFESSIONAL CORPORATION
262 Chellowe Road
Dillwyn, Virginia  23936
(434) 983-5005

*Counsel for Appellee*
  *Raymond R. Bell*

William F. Etherington
Leslie A. Winneberger
BEALE, DAVIDSON,
ETHERINGTON & MORRIS, P.C.
701 East Franklin Street, Suite 1200
Richmond, Virginia  23219
(804) 788-1500

*Counsel for Appellee*
  *Vincent B. Givens*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  16-1697          Caption:  Trump Tight, LLC v. Raymond Bell et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Raymond Bell
(name of party/amicus)



who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                  ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
        If yes, identify any trustee and the members of any creditors' committee:

Signature: __s/ Carlene Booth Johnson_____    Date: _____June 25, 2016_____

Counsel for: __appellee Raymond Bell_____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____June 25, 2016_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

__s/ Carlene Booth Johnson_____                    _____June 25, 2016_____
        (signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-1697__    Caption: Trump Tight, LLC v. Raymond R. Bell, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Vincent B. Givens
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

08/05/2015 SCC                                    - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Leslie A. Winneberger                Date:        6/21/16

Counsel for: Appellee

## CERTIFICATE OF SERVICE
****************************

I certify that on      June 21, 2016      the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Thomas H. Roberts (VSB # 26014)
Andrew T. Bodoh (VSB # 80143)
Thomas H. Roberts & Associates, P.C.
105 South 1st Street
Richmond, VA 23219
tom.roberts@robertslaw.org
andrew.bodoh@robertslaw.org

Carlene Booth Johnson (VSB # 36473)
Perry Law Firm
262 Chellowe Road
Dillwyn, VA 23936
penylawfirm@hughes.net

/s/ Leslie A. Winneberger                            6/21/16
(signature)                                           (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF THE CASE ............................................................ 1

SUMMARY OF THE ARGUMENT ..................................................... 4

ARGUMENT ..................................................................................... 7

I.  Standards For Qualified Immunity And Dismissal ................................ 7

II. Dismissal Of Trump's 14th Amendment Due Process Claims, For Failure To Allege A Procedural Or Substantive Due Process Violation, And On The Basis of Qualified Immunity, Was Not Error ................................................................. 10

     A.  The District Court Did Not Err In Dismissing Trump's Procedural Due Process Claims (Counts I-III) ....................... 10

         1.  Trump's Procedural Due Process Claims Fail Under The Applicable Law ..................................... 11

             a.  Paying Deputies For Security (Count I) ............... 19

             b.  Limiting Occupancy (Count II) ........................... 24

             c.  July 12, 2014 (Count III) .................................... 26

         2.  Trump's Argument Against Qualified Immunity, Relying On *In re Allen (Better Gov't Bureau, Inc. v. McGraw)*, Is Without Merit ....................... 29

     B.  The District Court Did Not Err In Dismissing Trump's Substantive Due Process Claims (Counts I-III) ....................... 33

III. Dismissal Of Trump's Fourth Amendment Claim Was Not Error ..................................................................................... 36

i

IV.     Dismissal Of Trump's Equal Protection Claim Was Not Error..........42

CONCLUSION ........................................................................................45

REQUEST FOR ORAL ARGUMENT ...................................................45

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Albright v. Oliver*,
  510 U.S. 266 (1994).........................................................................34

*Ashcroft v. Al-Kidd*,
  563 U.S. 731 (2011)...............................................................8, 38, 39

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................*passim*

*Bd. of Regents v. Roth*,
  408 U.S. 564 (1972).......................................................................23

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................8, 42, 44

*Bogart v. Chapell*,
  396 F.3d 548 (4th Cir. 2005) .....................................................*passim*

*Brown v. Sweeney*,
  526 F. Supp. 2d 126 (D. Mass. 2007)..............................................28

*Bryant v. Bell Atlantic Md., Inc.*,
  288 F.3d 124 (4th Cir. 2002) .........................................................23

*Cady v. Dombrowski*,
  413 U.S. 433 (1973).......................................................................41

*Campbell v. Galloway*,
  483 F.3d 258 (4th Cir. 2007) .........................................................32

*Chavez v. Martinez*,
  538 U.S. 760 (2003)..................................................................34, 35

*Conn v. Gabbert*,
    526 U.S. 286 (1999)...................................................................................35

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)..............................................................................33, 34

*Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.*,
    597 F.3d 163 (4th Cir.), *cert. denied*,
    562 U.S. 890 (2010)........................................................................38, 39, 41

*Durney v. Doss*,
    106 F. App'x 166 (4th Cir. 2004) ...................................................................41

*Fields v. Durham*,
    909 F.2d 94 (4th Cir. 1990), *cert. denied*,
    498 U.S. 1068 (1991)........................................................................16, 17, 18

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) .........................................................................43

*Freeman v. Town of Eatonville*,
    225 F. App'x 775 (11th Cir. 2006) ...............................................................18

*Hall v. Virginia*,
    385 F.3d 421 (4th Cir. 2004), *cert. denied*,
    544 U.S. 961 (2005)......................................................................................19

*Hogan v. Carter*,
    85 F.3d 1113 (4th Cir. 1996) .........................................................................39

*Hudson v. Palmer*,
    468 U.S. 517 (1984)...............................................................................*passim*

*Hunsberger v. Wood*,
    570 F.3d 546 (4th Cir. 2009) .........................................................................41

*Hunter v. Bryant*,
    502 U.S. 224 (1991)........................................................................................7

*In re Allen (Better Gov't Bureau, Inc. v. McGraw)*,
106 F.3d 582 (4th Cir. 1997) .......................................................29, 30, 31, 45

*In re Premier Automotive Services, Inc.*,
492 F.3d 274 (4th Cir. 2007) .......................................................35

*Iodice v. U.S. Dep't of Veterans Affairs*,
289 F.3d 270 (4th Cir. 2002) .......................................................43

*Johnson v. Caudill*,
475 F.3d 645 (4th Cir. 2007) .......................................................33

*Karadi v. Jenkins*,
7 F. App'x 185 (4th Cir. 2001) .......................................................41

*Kerry v. Din*,
135 S. Ct. 2128 (2015).......................................................35

*Korb v. Lehman*,
919 F.2d 243 (4th Cir. 1990), *cert. denied*,
502 U.S. 808 (1991).......................................................41, 42

*Lewis v. Newton*,
616 F. App'x 106 (4th Cir. 2015) .......................................................9

*Lochner v. New York*,
198 U.S. 45, 25 S. Ct. 539, 49 L. Ed. 937 (1905) .......................................................35

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982).......................................................*passim*

*McWaters v. Rick*,
54 F. App'x 379 (4th Cir. 2002) .......................................................38-39

*Mullenix v. Luna*,
136 S. Ct. 305 (2015).......................................................37, 39

*Obergefell v. Hodges*,
135 S. Ct. 2584 (2015).......................................................36

*Papasan v. Allain*,
    478 U.S. 265 (1986)..................................................................9

*Parratt v. Taylor*,
    451 U.S. 527 (1981)..........................................................*passim*

*Pearson v. Callahan*,
    555 U.S. 223 (2009).....................................................7, 8, 9, 38

*Philips v. Pitt County Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009) ...............................................9

*Plumer v. Maryland*,
    915 F.2d 927 (4th Cir. 1990) ..............................................18

*Reichle v. Howards*,
    132 S. Ct. 2088 (2012)........................................................38

*Saucier v. Katz*,
    533 U.S. 194 (2001)..........................................................7, 8

*Shirvinski v. United States Coast Guard*,
    673 F.3d 308 (4th Cir. 2012) .........................................19, 24

*Swanson v. Powers*,
    937 F.2d 965 (4th Cir. 1991), *cert. denied*,
    502 U.S. 1031 (1992)......................................................32, 41

*Sylvia Dev. Corp. v. Calvert County*,
    48 F.3d 810 (4th Cir. 1995) ...........................................28, 42

*Tri-County Paving, Inc. v. Ashe County*,
    281 F.3d 430 (4th Cir. 2002) ..............................................19

*Washington v. Glucksberg*,
    521 U.S. 702 (1997)............................................................36

*Waybright v. Frederick County, Maryland*,
    528 F.3d 199 (4th Cir. 2008), *cert. denied*,
    555 U.S. 1069 (2008)..........................................................34

*Weller v. Dep't of Soc. Serv.*,
    901 F.2d 387 (4th Cir. 1990) .......................................................................28

*Wilson v. Layne*,
    526 U.S. 603, 119 S. Ct. 1692, 143 L. Ed. 2d 818 (1999) ...........................39

*Wood v. Moss*,
    134 S. Ct. 2056 (2014)..................................................................................37

*Zinermon v. Burch*,
    494 U.S. 113 (1990)................................................................................*passim*

## CONSTITUTIONAL PROVISIONS

U.S. CONST. amend. IV ...................................................................................*passim*

U.S. Const. amend. XIV .................................................................................*passim*

## STATUTES

42 U.S.C. § 1983 ....................................................................................7, 14, 18, 28

Sussex County Code § 2-3 .......................................................................21, 23

Va. Code § 15.2-1712 ............................................................................20, 21, 23

## RULE

Fed. R. Civ. P. 12(b)(6).................................................................................*passim*

## STATEMENT OF THE CASE

Earl Cross, who owned the facility in Sussex County, Virginia leased by Trump Tight, LLC ("Trump"), arranged for Sussex County deputy sheriffs to provide security services there on weekend and holiday nights when Trump was open as a lounge and serving alcohol.  JA 64 (¶ 7), 70 (¶¶ 17-19), 71(¶ 23), 79 (¶ 38), 84 (¶ 47); *see also* Trump's Opening Brief 2.  Sussex County has a population of fewer than 12,000 people.  JA 60 (¶ 2).

From October 2013 to July 12, 2014, when Trump was open as a lounge, Trump paid five to eight uniformed deputies providing security services at the facility.  JA 65-68 (¶ 10), 71(¶¶ 23-25), 72-77 (¶¶ 28, 30), 134-164.

During this short period, deputies working security, on nights Trump opened as a lounge, made numerous arrests for criminal violations there –  almost all occurring between midnight and 4:00 a.m.  JA 134-164.  Deputies made several arrests involving guns, and even for possession of a firearm by a convicted felon, as well as for possession of a stolen firearm, many for disorderly conduct, and for obstruction of justice, assault and battery, possession of marijuana, underage possession of alcohol, theft from a motor vehicle, probation violation, and assault on a law enforcement officer.  JA 134-164.

Local and state law did not prohibit deputies from providing security services to Trump for pay.  JA 86 (¶¶ 58-59), 122.  Trump acknowledges that it

1

never made any payment or provided any gratuity to Sussex County Sheriff Raymond Bell.  JA 70 (¶ 19).

Every single weekend or holiday night when Trump was open as a lounge serving alcohol prior to July 12, 2014 and the deputies were working security, Trump made a management decision to exclude from its facility those under 21 years of age.  JA 79 (¶ 38).

On July 12, 2014, Trump planned to allow underage customers into its lounge, for the first time, even though alcohol was being served.  JA 79 (¶ 39). Uniformed deputies worked security that night.  There were still "nearly 200 people waiting to enter" Trump lounge, when Sheriff Bell directed the patrons to leave the facility and had deputies block the entrance to the lounge for the rest of the night.  JA 71 (¶ 23), 84 (¶ 47).

In a telephone call just prior to that, Sheriff Bell advised Trump management, "You can't monitor eighteen-year-olds in a dark club.  Someone go to the bar, buy them a drink, and go to the bathroom or go a dark spot of that club, and give them a drink," and "if you get shot up and you're have [sic] some eighteen-year-old up there with alcohol and they're going to have him an accident [sic], I'm  not going to be responsible."  JA 81 (¶ 45c, e).  "You can't dictate what hands the liquor's going, son [sic].  If you on the damn phone [sic] and they in the dark corners and in the bathroom and everywhere else and someone else's kid try

2

to get killed tonight for drinking underage alcohol [sic], it comes back to Raymond Bell." JA 83-84 (¶ 45n).

Trump alleges no history of criminal violations and arrests at any other business in Sussex County like that of Trump's lounge. The Young Men's Social Club was also provided security services by Sussex County deputies, as indicated by a letter from Sheriff Bell to that entity stating, "This is to notify you that effective January 1, 2014 the hourly rate for security at club events is increased to $35.00 per hour per deputy." JA 133. The Empire Restaurant and Lounge, a new business that leased the same facility after Trump, used Sussex County deputies as paid security. JA 114 (¶ 118c).[1]

Trump voluntarily surrendered its alcohol license and closed its business after July 12, 2014. JA 85 (¶ 53).

Trump filed this lawsuit asserting federal and state law claims, and has subsequently filed suit in state court in Sussex County Circuit Court.[2]

---

[1]Trump lists the Young Men's Social Club and Empire Restaurant and Lounge as businesses similarly situated to Trump that were treated differently. JA 110-111 (¶ 110c, l; ¶ 112).

[2]This Court can take judicial notice of such public information and records. *See* nn.3, 6. The Complaint filed in the state court ("State Complaint") is the subject of Appellees' Motion to File Supplemental Material. Should the Court grant the motion, the State Complaint is attached thereto.

# SUMMARY OF THE ARGUMENT

Sheriff Bell and Lt. Givens did not violate Trump's federal due process rights, either procedural or substantive. Neither with respect to payments to deputies working security at Trump lounge (Count I), nor restricting the lounge's maximum occupancy on those nights when the deputies provided security (Count II), nor closing the lounge for the rest of the night on July 12, 2014 (Count III), did the state delegate to Sheriff Bell and Lt. Givens the power and authority to effect the very deprivation alleged, nor delegate to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against the alleged deprivation.

Even assuming that Trump has alleged a deprivation protected by the Fourteenth Amendment, that the state could not foresee and implement prescriptive procedures with respect to the deprivation claimed means that postdeprivation process is adequate to satisfy due process. Trump has postdeprivation process available to it, as reflected in its Amended Complaint asserting a state law claim (as well as in the state court suit that Trump has also now brought, alleging numerous state law claims). Trump has stated no claim for violation of its procedural due process rights.

Nor has Trump stated a claim for violation of substantive due process (Counts I-III). The protection of substantive due process has for the most part been

accorded to matters relating to marriage, family, procreation, and the right to bodily integrity, and a broad "right to do business" such as Trump suggests has not been recognized. Furthermore, Trump acknowledges that what it has termed as a substantive due process component of its claims is properly analyzed under other, more specific, constitutional provisions (procedural due process and the Fourth Amendment). The Supreme Court has counseled against expanding the more generalized concept of substantive due process into not only novel areas, but into areas for which a more specific constitutional provision provides guidance, and the District Court properly held that Trump did not state a substantive due process claim and dismissed Trump's due process claims in that regard as well.

Not only has Trump failed to state any violation by Sheriff Bell or Lt. Givens of any due process right, but Sheriff Bell and Lt. Givens are also protected by qualified immunity. As the District Court also properly held, no such due process right was clearly established. The Supreme Court has repeatedly stressed that qualified immunity is not only a protection against liability, but against the burdens of litigation, and should be determined by the court, as a matter of law, at the earliest possible point. Qualified immunity is especially appropriate here, at this juncture and on this record, in light of Trump having already obtained the records of the Sussex County Sheriff's Office and Sussex County through multiple Freedom of Information Act requests.

Indeed, with respect to Trump's Fourth Amendment seizure claim, Trump does not cite to a single decision governing circumstances like those here, such that every reasonable officer in the shoes of Sheriff Bell and Lt. Givens would have known that what they did on the night of July 12, 2014 violated Trump's constitutional rights.  Nor did the District Court find any precedents for considering Sheriff Bell or Lt. Givens to have violated clearly established law with respect to Trump's Fourth Amendment claim.  As the Supreme Court has stressed, unless the existing precedents squarely govern the particular situation and have placed the constitutional question beyond debate, the officers are protected by qualified immunity.  The District Court properly dismissed Trump's Fourth Amendment claim on the basis of qualified immunity.

As for Trump's equal protection claim, regardless of the theory, Trump's claim fails with respect to the core requirement – that Trump was treated differently than other similarly situated businesses.  Trump's allegations amply show the numerous arrests and criminal incidents that took place on its premises on the nights it was open as a lounge serving alcohol, and  uniformed deputies were working security at Trump's landlord's behest – and that other Sussex County businesses were not similarly so situated.  In addition, no such equal protection right was clearly established.

It is respectfully submitted that the District Court's dismissal of this action should be affirmed.

## ARGUMENT

The District Court correctly ruled that Trump did not state federal claims under 42 U.S.C. § 1983 for violation of the Due Process Clause, the Fourth Amendment, or the Equal Protection Clause, and that qualified immunity also protects Sheriff Bell and Lt. Givens from liability.

## I.     Standards For Qualified Immunity And Dismissal

Qualified immunity is a question of law to be determined by the court at the "earliest possible stage in litigation," including on a Rule 12(b)(6) motion to dismiss, because it is "an entitlement not to stand trial or face the burdens of litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *Saucier v. Katz*, 533 U.S. 194, 200-201 (2001) ("[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings . . . .  Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'  The privilege is '*an immunity from suit* rather than a mere defense to liability'") (internal citation omitted, emphasis in original).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a federal

statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 735 (2011) (reversing denial of qualified immunity on motion to dismiss). *Accord Saucier v. Katz*, 533 U.S. at 201-202 ("whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. at 236.

An action cannot survive a Rule 12(b)(6) motion to dismiss when the claims asserted in the Amended Complaint are not supported by "[f]actual allegations . . . enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief"'." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Furthermore, Trump already obtained the records of the Sussex County Sheriff's Office and Sussex County through multiple Freedom of Information Act

requests, prior to filing this action.  *See* JA 89 (¶ 67, and *passim*), 121-167.  As the

Supreme Court emphasized in *Iqbal*, "the question presented by a motion to

dismiss a complaint for insufficient pleadings does not turn on the controls placed

upon the discovery process," and "'[i]t is no answer to say that a claim just shy of a

plausible entitlement to relief can, if groundless, be weeded out early in the

discovery process through careful case management'[.]" 556 U.S. at 684-85 (the

"basic thrust of the qualified-immunity doctrine is to free officials from the

concerns of litigation, including 'avoidance of disruptive discovery'").[3]

Qualified immunity protects "mistakes in judgment," and "[t]he protection

of qualified immunity applies regardless of whether the government official's error

is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of

law and fact'." *Pearson v. Callahan*, 555 U.S. at 231.

---

[3]This Court may consider not only the records Trump has attached to its
pleadings, but also the public record showing that Trump has, indeed, filed a state
court lawsuit against Sheriff Bell and Lt. Givens asserting the state law claim
Trump asserted in its Complaint and Amended Complaint in the District Court, and
numerous other state law claims as well.  *Philips v. Pitt County Mem'l Hosp.*, 572
F.3d 176, 178 n.2, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we
may properly take judicial notice of matters of public record"); *Papasan v. Allain*,
478 U.S. 265, 268 n.1 (1986) ("Although this case comes to us on a motion to
dismiss . . . we are not precluded in our review of the complaint from taking notice
of items in the public record"); *Lewis v. Newton*, 616 F. App'x 106 (4th Cir. 2015)
("a court may take judicial notice of matters of public record in considering a
motion to dismiss," affirming dismissal on the pleadings including on the basis of
qualified immunity).

It is respectfully submitted that peeling away that which is "not entitled to the assumption of truth," and examining what remains, as *Iqbal*, 556 U.S. at 679, instructs, shows that Trump has not stated a constitutional claim and that Sheriff Bell and Lt. Givens are also entitled to qualified immunity, as the District Court properly so held.

## II. Dismissal Of Trump's 14th Amendment Due Process Claims, For Failure To Allege A Procedural Or Substantive Due Process Violation, And On The Basis of Qualified Immunity, Was Not Error

The District Court correctly ruled that Trump did not allege a violation of its procedural or substantive due process rights.  Furthermore, the District Court found that no such rights were clearly established and ruled that Sheriff Bell and Lt. Givens are also entitled to qualified immunity and dismissal of those claims for that reason.  JA 183, 186-89, 194-95, 197.

### A. The District Court Did Not Err In Dismissing Trump's Procedural Due Process Claims (Counts I-III)

Trump asserts that its procedural due process rights were violated by being misled into paying Sussex County deputy sheriffs to work security for Trump on weekend or holiday nights, while open as a lounge and serving alcohol (Count I) (JA 79 ¶ 38, 91 ¶ 72); by Sheriff Bell limiting its occupancy to 400 patrons on those nights when the deputies were working security (Count II) (JA 78 ¶ 34, 95 ¶ 79); and by closing Trump's doors for the remaining hours on the night of July 12, 2014, when the deputies were working security and Trump had for the

10

first time opened its doors to patrons under the age of 21 while serving alcohol and there were still "nearly 200 people waiting to enter" (Count III) (JA 71 ¶ 23, 79 ¶ 38, 84 ¶ 47, 101 ¶ 87).

The District Court ruled that Trump did not state a violation of its right to procedural due process. In addition, the District Court ruled that no such right was clearly established such that a reasonable officer in the positions of Sheriff Bell and Lt. Givens would have known that his actions violated that right, and that they are therefore also entitled to qualified immunity and dismissal of those claims on that basis. It is respectfully submitted that Trump's procedural due process claims were properly dismissed on both of those grounds, and the District Court's ruling should be affirmed.

### 1.    Trump's Procedural Due Process Claims Fail Under The Applicable Law

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

When a plaintiff "has been deprived of property under color of state law, [but] the deprivation did not occur as a result of some established state procedure," there has been no violation of the Due Process Clause of the Fourteenth Amendment. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981).

The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place.

*Id*. at 541.

The Supreme Court "extended its *Parratt* holding, in its 1984 *Hudson [v. Palmer*, 468 U.S. 517 (1984)] decision, to intentional deprivations of property." *Bogart v. Chapell*, 396 F.3d 548, 559 (4th Cir. 2005). As the Supreme Court explained in *Hudson*, "[t]he underlying rationale of *Parratt* is that when deprivations of property are effected through random and unauthorized conduct of a state employee, predeprivation procedures are simply 'impracticable' since the state cannot know when such deprivations will occur." 468 U.S. at 533. Thus, as this Court has held, "under the *Parratt/Hudson* doctrine, such a deprivation 'does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" *Bogart v. Chapell*, 396 F.3d at 560.

Just as this Court concluded in *Bogart v. Chapell*, "[u]nder the principles enunciated by the Supreme Court . . . this dispute fits squarely within the *Parratt/Hudson* doctrine[.]" *Id*. at 561. With respect to all three of Trump's procedural due process claims, Trump alleges that Sheriff Bell's and Lt. Givens'

12

actions were *not* pursuant to a statutory scheme that authorized such conduct. Rather, Trump alleges that their conduct was contrary to ordinances and laws, unpredictable, and impossible for the state or local government to foresee and address through predeprivation process.[4] This is precisely why the *Parratt/Hudson* doctrine applies in this circumstance.

In *Bogart v. Chapell*, various sheriff's department, county humane society, and county employees participated in executing a warrant to search the plaintiff animal owner's property and seized animals that had been mistreated. Over 200 dogs and cats were seized. All but two dogs and a few cats were euthanized, without notice or an opportunity for the animal owner to be heard, without exigent circumstances justifying the immediate destruction of her animals, and without any close examination to determine how many of the animals were healthy enough to save. *Id*. at 553, 556.

---

[4]*E.g.*, JA 62 ¶ 5(a)(i) (secured payment for "so-called security services of deputies through illegal means," including "violation of local ordinances and general orders regulating such conduct"), ¶ 5(b) ("unlawfully enforced arbitrary occupancy limits on Trump's facilities"), ¶ 5(d) (acting "without lawful authority or justification" on July 12, 2014); *see also* JA 91 ¶ 72, 93 ¶ 75(b)(ii) ("[g]iven the unpredictability of the Defendants' conduct, it was impossible for the state or local government to provide effective pre-deprivation procedural due process"); JA 95 ¶ 79; JA 99 ¶ 82(b)(iii) ("[g]iven the unpredictability of the Defendants' conduct, it was impossible for the state or local government to provide effective pre-deprivation procedural due process"); JA 101 ¶ 87; JA 106 ¶ 98(a)(ii) ("[g]iven the unpredictability of the Defendants' conduct, it was impossible for the state or local government to provide effective pre-deprivation procedural due process").

This Court nevertheless concluded in *Bogart v. Chapell* that "under the *Parratt/Hudson* doctrine, the random and unauthorized euthanization of Bogart's animals by the Defendants – however atrocious – did not constitute a violation of Bogart's procedural due process rights because a meaningful postdeprivation remedy for the loss is available." 396 F.3d at 563 ("Bogart does not possess a viable § 1983 procedural due process claim").

Furthermore, this Court distinguished the *Bogart* case from *Zinermon v. Burch*, 494 U.S. 113 (1990), the decision on which Trump relies, Opening Brief 18-21, 25-26, 28, explaining "[t]he State in *Zinermon* had delegated to the [defendant] personnel 'the power and authority to effect the very deprivation complained of . . . and delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement.'"

In *Zinermon*, admission to a state mental hospital, whether voluntary or involuntary, was governed by "a comprehensive statutory scheme." *Zinermon*, 494 U.S. at 122. As part of this scheme, state statute required "express and informed consent" before one could be voluntarily admitted. *Id*. at 123. Involuntary admittance, on the other hand, required notice to the patient, judicial review with appointed counsel, access to medical records, and an independent medical examination. *Id*. at 123. The state statute also defined the term express and informed consent. *Id*. In *Zinermon*, the concern was the "substantial liberty

interest in avoiding confinement in a mental hospital," and the "nature of mental illness mak[ing] it foreseeable that a person needing mental health care" would be unable to provide "informed consent" when signing papers for voluntary admission to a mental hospital, such that the person might be "confined indefinitely without benefit of the procedural safeguards of the involuntary placement process[.]" *Id*. at 131, 133.

The Court in *Zinermon* ruled that the *Parratt/Hudson* doctrine did not apply in this context because the statutory scheme required consent by a competent person before voluntary admission, and it was foreseeable that mentally ill persons might lack competence to give such consent. *Id*. at 136. The state could predict the likelihood of a deprivation during the application process when a mentally ill individual gave their consent, as evidenced by the statutory mechanism for involuntary admission. *Id*. at 136. The fact that such a mechanism existed also meant that pre-deprivation process was possible. *Id*. at 136-37. The mental health staff's actions in admitting the mental health patient plaintiff as voluntary, even though incompetent, was not unauthorized as understood in the *Parratt/Hudson* doctrine; the statutory scheme gave them a framework by which they could admit mentally ill patients, both voluntary and involuntary. *Id*. at 138.

Conversely, the due process procedures implicated in *Bogart v. Chapell* were "procedures that were to be provided not by the Defendants themselves, but

15

rather by the state," and thus the conduct of the defendants was "properly characterized as unauthorized, in the sense that term was used in *Parratt* and *Hudson*." 396 F.3d at 562.

As the District Court here properly ruled, after a thorough analysis, "the foreseeability inquiry focuses on foreseeability by the State – the entity who could effectuate pre-deprivation safeguards – not on foreseeability by the defendants themselves." JA 193. *See also Fields v. Durham*, *Fields v. Durham*, 909 F.2d 94, 97 (4th Cir. 1990) ("In some situations . . . the *state* cannot foresee, and thus cannot avert through implementation of prescriptive procedures, the deprivation in issue") (emphasis added), *cert. denied*, 498 U.S. 1068 (1991). *Accord Hudson*, 468 U.S. at 533, 534 ("[t]he *state* can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct," and therefore "predeprivation procedures are simply 'impracticable' since the *state* cannot know when such deprivations will occur"; "[w]hether an individual employee himself is able to foresee a deprivation is simply of no consequence. The controlling inquiry is solely whether the *state* is in a position to provide for predeprivation process") (emphasis added).[5]

---

[5]The *Parratt/Hudson* doctrine applies to both property and liberty interests. *Zinermon v. Burch*, 494 U.S. at 132.

Trump's contention that this case is more like *Zinermon* is misguided. As the District Court properly explained:

> Trump runs through established procedures found in various state and local codes for billing off-duty services through the county treasurer, lowering occupancy limits through the local building department, and revoking an ABC license through the Virginia ABC Board. . . . By Trump's own descriptions, each of these procedures grants authority to some entity other than the local sheriff's department. This obviously differs from *Zinermon*, where "[t]he State delegated [certain state actors] the power and authority to effect the very deprivation complained of . . . and also delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful [deprivation].'" *Zinermon*, 494 U.S. at 138. In this case, the Commonwealth could not foresee that the local sheriff's department would overtake these particular duties for a particular business, and therefore could not set up a procedure to address these actions. As the defendants' conduct in this case was unforeseeable, the availability of meaningful post-deprivation remedies will satisfy due process. *See Zinermon*, 494 U.S. at 128.

JA 194.

With respect to a procedural due process claim, an actionable constitutional violation "is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." *Fields v. Durham*, 909 F.2d at 98, quoting *Zinermon*, 494 U.S. at 125-26. Trump's postdeprivation remedies satisfy due process, and Trump states no procedural due process claim under any of its Counts I-III.

"[W]hen the state deprives an individual of a property interest as the result of an unauthorized failure of its agents to follow state procedure [as plaintiff

alleges], due process is satisfied by the availability of meaningful postdeprivation process." *Plumer v. Maryland*, 915 F.2d 927, 929 (4th Cir. 1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981)).

As the District Court correctly ruled:

> Here, Trump has post-deprivation remedies. Indeed, the Court need look no further than the amended complaint, where Trump brings a state law claim of business conspiracy, seeking $7,500,000. (Am. Compl. ¶¶ 116-19.).

JA 193-94.

Just as in *Fields v. Durham*, "the pendent claims raised in [t]his federal complaint [show that plaintiff] also had available state law claims for civil conspiracy" and other state deprivation remedies, and Trump's § 1983 due process claims therefore fail for that reason as well. 909 F.2d at 99. *See also Freeman v. Town of Eatonville*, 225 F. App'x 775, 780 (11th Cir. 2006) (due process claim of nightclub and its owner in connection with law enforcement officers closing down the nightclub for the remainder of the night and dispersing the crowd failed because "[p]laintiffs could have pursued remedies in state court for lost profits or damages suffered by the club's closure").[6]

---

[6]Indeed, Trump pursues state law postdeprivation remedies in its state court action in Sussex County Circuit Court alleging statutory and common law conspiracy, trespass, violations of the Virginia Constitution, and breach of fiduciary duty of loyalty. Trump's filing of that state court action is shown on the official website for Virginia's state courts, http://www.courts.state.va.us/, accessing the Sussex Circuit Court case status information, civil division, and

18

It is respectfully submitted that the District Court properly determined that Trump has failed to state a procedural due process claim with respect to Trump's Counts I-III, in light of the applicable law as discussed above, and discussed further below.

### a.    Paying Deputies For Security (Count I)

Trump argues that the "defendants' security-for-pay scheme violated the ordinance and the state law, let alone the sheriff's promulgated rules," and that "[t]his case is controlled by *Zinermon*" and its procedural due process rights were violated. Opening Brief 18. Trump argues that, "It is predictable sheriffs and deputies may establish rules and practices for such off-duty employment inconsistent with the state and local law, depriving employers of their liberty and

---

searching Trump's name. The Court can take judicial notice of public records and information, as discussed above. *See also Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (affirming dismissal and consideration in analyzing complaint's sufficiency statistics "publicly available on the official redistricting website of the Virginia Division of Legislative Services," because "[w]e may properly take judicial notice of this information in reviewing the dismissal of the complaint under Rule 12(b)(6)"), *cert. denied*, 544 U.S. 961 (2005).

Even if Trump did not pursue its state law remedies, or if Trump fails in its state law remedies, that does not make them any less adequate for purposes of according Trump due process. *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 438 (4th Cir. 2002) (plaintiff had postdeprivation "remedies available to it in the state courts but chose not to utilize them"). Whether Trump "actually has a remedy in contract . . . or a remedy in tort . . . [,] that [Trump] either did not bring or fruitfully pursue these other forms of relief does not give [Trump] the right to move against the government on constitutional grounds." *Shirvinski v. United States Coast Guard*, 673 F.3d 308, 317 (4th Cir. 2012).

property," with such "deprivations" occurring "when payment is demanded or made, when the employment relationship begins, or when the terms of the relationship changes."  Trump suggests that, "A more specific process at the state (or local) level may have altered the outcome."  Opening Brief 19-20.

Trump's case is very different from *Zinermon*.  The only statutory scheme in place is Va. Code § 15.2-1712, which allows localities to adopt an ordinance permitting off-duty deputy sheriffs to be employed in a role that requires use of their police powers.  The locality can either set the rules to be applied to such off-duty employment or delegate promulgation of those rules to the sheriff.  This situation is completely unlike the comprehensive statutory scheme in *Zinermon*, which specifically required the informed consent of patients in a situation where such consent cannot always be informed, *i.e.*, mental health.  In *Zinermon*, unlike in *Bogart v. Chapell*, as this Court explained in distinguishing *Zinermon*:

(1)    "the State knew precisely when any resulting erroneous deprivation would occur . . . – when a patient is given admission forms to sign";

(2)    "[t]he State . . . had provided some procedures for the voluntary and involuntary admission of patients to mental hospitals . . . [but] failed to ensure that the proper procedures were followed"; and

20

> (3)  "[t]he State in *Zinermon* had delegated to the hospital personnel 'the power and authority to effect the very deprivation complained of . . . and delegated to them the concomitant duty to initiate the procedural safeguards set up by state law to guard against unlawful confinement."

*Bogart v. Chapell*, 296 F.3d at 561-62.

There is no corresponding counterpart to any of these *Zinermon* factors here. Contrary to Trump's arguments, the state could not have foreseen that a sheriff would use his delegated rule-making authority to force a private business to use off-duty deputies for security, as Trump alleges. The statute allows a locality to delegate authority for the sheriff to make "reasonable rules to apply to such off-duty employment." Va. Code § 15.2-1712. A reasonable reading of this statute would conclude that the rule-making applied to the off-duty work itself, not who was required to use it. This is borne out by the fact that the ordinance adopted by Sussex County[7] and the rules promulgated by Sheriff Bell did not include a requirement that certain private businesses had to use deputies to provide security.

Trump itself alleges with respect to its Count I claim, "Given the unpredictability of the Defendants' conduct, it was impossible for the state or local

---

[7]Contrary to Trump's assertion, Sussex County Code § 2-3, the ordinance allowing for off-duty employment, does not prohibit off-duty employment at bars and lounges. While it defines "sponsoring organizations" in subsection (a), there is no provision that confines off-duty work to sponsoring organizations or prohibits off-duty employment at certain establishments. JA 122.

21

government to provide effective pre-deprivation procedural due process."  JA 93 (¶ 75(b)(ii)).

Trump also argues that this claim is "akin to *Logan*," Opening Brief 20, 21. This argument also lacks merit.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), involved a comprehensive statutory scheme for dealing with employment discrimination. According to that scheme, a disgruntled employee could make a complaint and the employment commission had 120 days to hold a "fact finding conference" to determine whether the complaint could be settled or whether it would issue a formal complaint against the employer.  *Id*. at 424-25.  In *Logan*, the commission failed to set the conference until 120 days had passed and, as a result, Logan's claim was terminated.  *Id*. at 426-28.

In *Logan*, the Supreme Court explained:

> [I]t is the state system itself that destroys a complainant's property interest, by operation of law, whenever the Commission fails to convene a timely conference- whether the Commission's  action is taken through negligence, maliciousness or otherwise.

*Id*. at 436.  The *Logan* court also explained that this established state system was what set this case apart from the *Parratt* case.  *Id*.  *Parratt* was the "result of a random and unauthorized act by a state employee…not a result of some established state procedure."  *Id*. at 435-36 (*quoting Parratt*, 451 U.S. at 541).

As explained *supra*, there was no established state system or comprehensive statutory scheme with regard to requiring certain businesses to engage off-duty

22

officers for security.  While Va. Code § 15.2-1712 and Sussex County Code § 2-3
provide guidance for off-duty employment, they do not contemplate a scenario
where use of off-duty officers is required of certain businesses.  The statutory
schemes in *Zinermon* and *Logan*, on the other hand, contemplated the very
scenarios that deprived individuals of due process, *i.e*., involuntary admissions to
mental health hospitals and hearings on discrimination claims before termination.
The state had no way to provide meaningful pre-payment process because it could
not have foreseen that a sheriff or his deputies would require businesses to employ
officers as off-duty security.  Because the *Parratt/Hudson* doctrine applies to
Trump's due process claim arising from the security payments it was required to
pay, post-deprivation remedies provide all the process Trump is due.

Trump's own Amended Complaint, with its pendent state law claim, and the
state court action Trump has filed, show that Trump has post-deprivation remedies.
Trump has been accorded all the process it is due.[8]

---

[8]"The requirements of procedural due process apply only to the deprivation
of interests encompassed by the Fourteenth Amendment's protection of liberty and
property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972).  Trump was not
deprived of any property or liberty entitlement as is necessary to satisfy the initial
required element of its Count I procedural due process claim.  Although the
District Court did not rule on this basis, this Court can nevertheless affirm
dismissal on that basis too.  *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132
(4th Cir. 2002) ("we can affirm on any legal basis supported by the record and are
not confined to the grounds relied on by the district court").

The District Court correctly held that Trump has not alleged a violation of its right to procedural due process, and dismissal of Trump's Count I procedural due process claim should be affirmed.

### b.    Limiting Occupancy (Count II)

Trump argues that limiting the lounge's occupancy to less than the maximum lawful occupancy, when the deputies were working security, violated its procedural due process rights.  Opening Brief 23-25.

For the same reasons discussed above in Point 1, Trump states no procedural due process claim with respect to the occupancy limit.  Trump alleges that the Virginia Uniform Statewide Building Code dictates the maximum occupancy of a business facility, and that "the local building department is the proper authority to enforce" it.  Opening Brief 23, 26; JA 96 ¶ 79(a).

Contrary to Trump's argument, this claim is not governed by *Zinermon*. Opening Brief 25 n.10.  As the District Court correctly determined:

> By Trump's own descriptions, each of these procedures grants
> authority to some entity *other than the local sheriff's department*.
> This obviously differs from *Zinermon*, where "[t]he State delegated
> [certain state actors] the power and authority to effect the very
> deprivation complained of . . . and also delegated to them the
> concomitant duty to initiate the procedural safeguards set up by state

---

The Supreme Court "has repeatedly admonished judges to be wary of turning the Due Process Clause into 'a font of tort law' by permitting plaintiffs to constitutionalize state tort claims through artful pleading."  *Shirvinski v. United States Coast Guard*, 673 F.3d at 314.

24

> law to guard against unlawful [deprivation].'"  *Zinermon*, 494 U.S. at
> 138.

JA 194 (emphasis added).

Nor does Trump's allegation that its lounge was limited to less than its maximum occupancy on more than one occasion "make[] this case like *Logan*," as Trump also argues.  Opening Brief 24.  In *Logan*, the employment commission was given the authority to hold the fact-finding conference, and its failure to do so timely is what terminated the plaintiff's claim.  455 U.S. at 426-28.  *Logan* involved a violation arising from an established procedure set out in a comprehensive statutory scheme.  While the building code and applicable state law set out a framework regarding occupancy limits, it does not give a sheriff or his deputies the authority to lower an occupancy limit, nor would it be foreseeable to the state that a sheriff or his deputies would do so.

Once again, enforcing a lower occupancy limit should be analyzed under the *Parratt/Hudson* doctrine.  The *Parratt/Hudson* doctrine focuses on whether the *state* can foresee certain conduct and provide for pre-deprivation process; it matters not whether the employee, *i.e.*, Sheriff Bell and/or Lt. Givens, could foresee their intentional conduct.  *See Zinermon*, 494 U.S. at 130 (citing *Hudson*).

Trump's argument that Sheriff Bell and Lt. Givens should have engaged in the political process to obtain the authority to limit Trump's occupancy limit ignores the fact that the state provides due process.  If the state could not foresee

that Sheriff Bell and Lt. Givens were going to unilaterally lower the occupancy limit, its legislature cannot establish procedures to protect Trump's rights in this scenario. As Trump pointed out, the state did foresee and establish procedures regarding occupancy limits in the building code to be enforced by local building departments.[9]

Trump itself alleges, with respect to its Count II claim, "Given the unpredictability of the Defendants' conduct, it was impossible for the state or local government to provide effective pre-deprivation procedural due process." JA 99 ¶ 82(b)(iii).

Because the state could not foresee that Sheriff Bell and/or Lt. Givens would impose an occupancy limit, the state only need provide post-deprivation remedies, of which remedies Trump has availed itself.

### c.    July 12, 2014 (Count III)

Trump argues that its procedural due process rights were violated during the events of July 12, 2014. Trump acknowledges much of its Count III duplicates

---

[9]Indeed, to the extent that Trump suggests on brief that there was time "to initiate some legal process," and "[p]re-deprivation process was not impossible here," Opening Brief 24 and 25 n.10, what Trump suggests only indicates that *Trump itself* could have pursued pre-deprivation remedies, but chose not to, which only further negates any due process claim. In addition, although the District Court did not rule on this basis, it is respectfully submitted that Trump does not allege or provide authority showing that it had a federal due process-protected interest in having patrons in excess of 400, up to its "maximum lawful occupancy of 624 people when used as a food establishment," Opening Brief 23, and its claim fails on that basis as well.

what Trump alleges in its other procedural due process claims and in Trump's

Fourth Amendment (Count IV) claim.  Opening Brief 27 ("represent[s] a

continuation of the conduct complained of in Count I"; "are substantially similar to

the conduct discussed in Count II"), 28 ("[t]his conduct constitutes a due process

violation if it is not a seizure within the meaning of the Fourth Amendment").

Trump's Count III procedural due process claim should be dismissed for the

same reasons discussed above.  Only the particular aspects that Trump argues

separately in its Opening Brief with respect to its Count III procedural due process

claim are addressed here.   Trump states, "Ordering Trump to refund money to

patrons falls within the *Zinermon* precedent," arguing that it "is predictable," [t]he

process the defendants selected was inappropriate to the circumstances," and "[t]he

state could create better guidance on the issue, and it is not absurd to say guidance

would have gone unheeded."  Opening Brief 28.  Trump also states that Sheriff

Bell "[o]rdering Trump to leave the county, together with claiming the ABC

license was revoked and its lease was not extended, falls under the *Logan*

precedent."  Opening Brief 29.

None of the alleged actions of Sheriff Bell and/or Lt. Givens were

predictable or foreseeable to the state, and *other* entities (*e.g.*, the Virginia ABC

Board) were given the authority under the relevant procedures.  As Trump alleges

with respect to Count III, "Given the unpredictability of the Defendants' conduct,

27

it was impossible for the state or local government to provide effective pre-deprivation procedural due process." JA 106 ¶ 98(a)(ii). The *Parratt/Hudson* doctrine applies, not *Zinermon* or *Logan*. The post-deprivation remedies available to Trump, of which it continues to avail itself, are sufficient to satisfy due process.[10]

---

[10]In addition, required elements of Trump's due process claims, whether procedural or substantive, are that Trump had a Fourteenth Amendment-protected interest and that the defendant *caused* the alleged deprivation of the protected interest. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 826, 827 (4th Cir. 1995).

Trump's allegations show, however, that its lease was not terminated, and that Trump chose to "surrender[] its alcohol license" and shutter the business. JA 26 ¶¶ 53, 55. "If one voluntarily surrenders a liberty interest to the State, there has been no 'deprivation' of that interest by the State, and no due process violation." *Weller v. Dep't of Soc. Serv.*, 901 F.2d 387, 393 (4th Cir. 1990). That Sheriff Bell allegedly threatened to have Trump's alcohol license revoked and its lease terminated -- but did neither -- does not give rise to a due process claim. "'[M]ere verbal threats made by a state-actor do not constitute a § 1983 claim'[.]" *Brown v. Sweeney*, 526 F. Supp. 2d 126, 131-32 (D. Mass. 2007) (police officer "orally 'threatened' plaintiff to impound the vehicle," but never actually did, and thus the plaintiff "fails to allege any cognizable deprivation" of a protected interest as required for a federal due process claim). In addition, the threat of arrest to which Trump pegs its claim regarding Trump's closure of its business after July 12, 2014, is alleged in the Amended Complaint as a threat by Sheriff Bell to arrest an individual manager if he did not "pa[y] a deputy the full amount he was due from a prior night," which amount Trump had "disputed as it involved time spent at the jail after Trump closed, booking a person who had been arrested." Trump alleges it paid the amount for the deputy then, and Trump's apparent effort to imply that that comprises a deprivation of Trump's business after July 12, 2014 is not plausible. JA 62 ¶ 5(a)(vi), 85 ¶¶ 53, 51.

The District Court correctly held that Trump has not alleged a violation of procedural due process, and dismissal of Trump's Counts I-III procedural due process claims should be affirmed.

### 2.    Trump's Argument Against Qualified Immunity, Relying On *In re Allen* (*Better Gov't Bureau, Inc. v. McGraw*), Is Without Merit

The District Court also properly held, as an alternative grounds for dismissal, that Sheriff Bell and Lt. Givens are protected by qualified immunity.

Trump argues that "the Sheriff of Sussex County and his deputies had no authority to engage in such off-duty employment with Trump" (Count I), that only "the local building department is the proper authority to enforce" occupancy limits (Count II), and that the events of July 12, 2014 were not authorized (Count III), and therefore "this conduct is not protected by qualified immunity."  Opening Brief 22, 26, 29.

Trump relies upon *In re Allen (Better Gov't Bureau, Inc. v. McGraw)*, 106 F.3d 582 (4th Cir. 1997), for its argument against qualified immunity.  Opening Brief 9, 10, 21, 22, 26, 29, 35, 36, 49.  Trump contends that Sheriff Bell and Lt. Givens are not entitled to qualified immunity because their conduct was "clearly beyond the scope of the defendants' office under state law and local ordinances, and reasonable officers in the defendants' positions would have known this." Opening Brief  21-22.

*In re Allen* does not support Trump's argument against qualified immunity. Rather, *In re Allen* supports finding that Sheriff Bell and Lt. Givens are entitled to qualified immunity.  In *In re Allen*, the West Virginia Attorney General filed articles of incorporation for a "government agency corporation" – with a name similar to a non-profit organization that was criticizing and attempting to investigate the Attorney General, thereby blocking the organization from incorporating or registering to do business in West Virginia under its name.  106 F.3d at 588.  The non-profit organization filed suit, claiming infringement on its trade name and service mark and violation of its free speech rights.  *Id.* at 588-89.

This Court held that the West Virginia Attorney General was not entitled to qualified immunity when he "created an entity heretofore unknown to West Virginia law, with personal funds no less," and there was no authority for creating such an entity, nor had any West Virginia Attorney General ever done so.  *Id.* 596-97 and n.5.

While affirming the District Court's denial of qualified immunity to the West Virginia Attorney General in those specific circumstances, this Court emphasized that:

> [T]he issue is neither whether the official properly exercised his discretionary duties, nor whether he violated the law.  If these were the relevant inquiries, any illegal action would, by definition, fall outside the scope of an official's authority. . . .  Instead, a court must ask whether the act complained of, if done for a proper purpose,

would be within, or reasonably related to, the outer perimeter of an
official's discretionary duties.

*In re Allen*, 106 F.3d at 594.

As this Court stressed:

[I]n order to ensure that public officials are adequately protected from
liability, an official's conduct falls within his authority *unless* a
reasonable official in the defendant's position would have known that
the conduct was clearly established to be beyond the scope of that
authority.

*In re Allen (Better Gov't Bureau, Inc. v. McGraw)*, 106 F.3d at 594 (emphasis in

original).[11]

Sheriff Bell and Lt. Givens were acting "within, or reasonably related to, the

outer perimeter of [their] discretionary duties," and are therefore entitled to

qualified immunity. Even if Trump's pleadings were sufficient to state a federal

claim, what Trump alleges – having a business pay off-duty uniformed deputies as

a security presence, closing for part of one night a lounge that had a history of

criminal incidents and was allowing underage patrons in for the first time while

serving alcohol, and had hundreds of people trying to get in, and restricting the

number of patrons entering such a facility – are not things a reasonable officer in

the shoes of Sheriff Bell or Lt. Givens would have believed constituted violations

---

[11]"Unauthorized," for purposes of the *Parratt/Hudson*, is thus not the
equivalent of violation of clearly established law for purposes of a qualified
immunity analysis.

of Trump's constitutional rights.  It is reasonable to believe the circumstances they faced at the lounge would require use of their police powers.  Indeed, the off-duty deputies providing security did on numerous occasions.  Sheriff Bell and Lt. Givens should therefore be accorded qualified immunity, as the District Court so held, as an alternative, independently-sufficient basis for dismissal of Trump's claims.

Indeed, as the District Court pointed out in its Opinion, Trump has not cited a single case showing that the alleged violations are clearly established.  JA 194.

> [W]e note that in determining whether the law is clearly established, the vintage of the asserted right is of less guidance than the specificity of the right. The right to due process, for example, might be considered clearly established because of the Constitution's Due Process Clause; however, "if the test of 'clearly established law' were to be applied at this level of generality, it would bear no relationship to the 'objective legal reasonableness' that is the touchstone of *Harlow*."  Rather, the "contours of the right" must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional.

*Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) (reversing district court's denial of motion to dismiss, internal citation omitted), *cert. denied*, 502 U.S. 1031 (1992).

"When determining whether a reasonable officer would have been aware of a constitutional right, we do not impose on the official a duty to sort out conflicting decisions or to resolve subtle or open issues."  *Campbell v. Galloway*, 483 F.3d 258, 271 (4th Cir. 2007) (defendants entitled to qualified immunity).

32

> We do not require of such officials the legal knowledge culled "by the collective hindsight of skilled lawyers and learned judges," but instead only "the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct." "Absent clearly established law that proscribe[s] [an official's] specific conduct, [he] should not be subjected to suit."

*Johnson v. Caudill*, 475 F.3d 645, 650 (4th Cir. 2007) (internal citation omitted, alterations in original).

Sheriff Bell and Lt. Givens are protected by qualified immunity, and dismissal of Trump's claims should be affirmed for that reason as well.

## B.     The District Court Did Not Err In Dismissing Trump's Substantive Due Process Claims (Counts I-III)

Trump also makes substantive due process claims in Counts I-III of its Amended Complaint.  Trump argues that it "has a fundamental right to conduct lawful business, free from unlawful interference by law enforcement."  Opening Brief 30.

As the Supreme Court has emphasized:

> Because we have "always been reluctant to expand the concept of substantive due process," we held in *Graham v. Connor*, 490 U.S. 386, that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."

*County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (internal citations omitted).

As Trump acknowledges, and the District Court also determined, specific constitutional provisions – procedural due process, and the Fourth Amendment (Count IV) – cover the conduct Trump alleges. Opening Brief 27-28, 36 n.17; Opinion JA 195. Consequently, those more specific constitutional provisions, "not the more generalized notion of substantive due process, must be the guide for analyzing these claims," and Trump's substantive due process claims were properly dismissed. *Lewis*, 523 U.S. at 842; JA 195.

In addition, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994) (affirming Rule 12(b)(6) dismissal of due process claim). The Supreme Court has made clear that it is only "conduct that 'shocks the conscience' and nothing less" that may give rise to a federal substantive due process claim, and "that courts should exercise 'judicial self-restraint' and 'utmost care' in novel substantive due process cases[.]" *Waybright v. Frederick County, Maryland*, 528 F.3d 199, 204, 205 (4th Cir. 2008) (citing Supreme Court decisions), *cert. denied*, 555 U.S. 1069 (2008).[12]

---

[12]Trump's argument that, "Intentional injuries committed by law enforcement not justifiable by any government interest typically constitute a substantive due process violation," Opening Brief 30, citing *Waybright* and *Chavez v. Martinez*, 538 U.S. 760 (2003), is unfathomable. Neither of those decisions supports Trump's assertion. *Waybright v. Frederick County, Maryland*, 528 F.3d at 205 (affirming denial of plaintiff's substantive due process claims and remand of state claims, noting that there is a "presumption [that] should be vigorously

34

What Trump seeks to make a federal substantive due process claim is very far afield from that to which such protection has been considered to apply.

Neither the Supreme Court nor this Court has recognized such a "fundamental" right to do business protected by the Due Process Clause. *In re Premier Automotive Services, Inc.*, 492 F.3d 274, 283 (4th Cir. 2007) ("The recognition of such a broad 'right to do business' would be akin to that [recognized] in *Lochner v. New York*, 198 U.S. 45, 25 S. Ct. 539, 49 L. Ed. 937 (1905), and its progeny, which the Supreme Court has long since refused to recognize") (alteration in original). *See also Conn v. Gabbert*, 526 U.S. 286, 292 (1999) ("earlier cases" that indicated some generalized due process right "all deal with a complete prohibition of the right to engage in a calling, and not the sort of brief interruption which occurred here").

---

applied" against finding such a claim where there is overlap with state tort law); *Chavez v. Martinez*, 538 U.S. at 776 ("our oft-stated reluctance to expand the doctrine of substantive due process[] further counsel[s] against recognizing a new 'fundamental liberty interest' in this case," concluding that the plaintiff failed to allege a violation of the Fourteenth Amendment).

Equally perplexing is Trump's argument that "this protection has always extended to the pursuit of a livelihood through lawful commercial activity," Opening Brief 31, citing *Kerry v. Din*, 135 S. Ct. 2128 (2015). *Kerry v. Din* also does not support Trump's assertion, but rather quite the opposite. 125 S. Ct. at 2133 ("Din, of course, could not conceivably claim . . . denial . . . of life or property; and under the above described historical understanding, a claim that it deprived her of liberty is equally absurd," vacating the Ninth Circuit's judgment that Din had a protected liberty interest in marriage implicated).

Indeed, the decisions Trump points to for its "fundamental right" argument – *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) (same-sex marriage); *Washington v. Glucksberg*, 521 U.S. 702 (1997) (assisted suicide) (Opening Brief 30) – only highlight how very far afield Trump's claims are from anything even remotely implicating any fundamental right protected by substantive due process.[13]

The District Court correctly held that Trump has not alleged a violation of substantive due process, and dismissal of Trump's Counts I-III substantive due process claim should be affirmed.

## III.     Dismissal Of Trump's Fourth Amendment Claim Was Not Error

Trump's Fourth Amendment claim is solely regarding the events of the night of July 12, 2014, claiming a seizure of its property.

Trump does not cite a single precedent governing circumstances like those here such that every reasonable officer in the shoes of Sheriff Bell and Lt. Givens on the night of July 12, 2014 would have known their actions violated Trump's constitutional rights.

---

[13]Although the District Court dismissed Trump's substantive due process claims without reaching qualified immunity, as reflected in the discussion of qualified immunity above, Sheriff Bell and Lt. Givens are also protected by qualified immunity with respect to Trump's substantive due process claims and dismissal of those claims on that basis. Sheriff Bell and Lt. Givens did not violate any clearly established constitutional right of Trump in that regard, and Trump points to none.

Instead, Trump seeks to have the Court step so far back and view Trump's Fourth Amendment claim at such a "level of generality," Opening Brief 42, that the particular circumstances Trump has alleged would be ignored and the Supreme Court's standard emasculated for what constitutes "clearly established law" in a qualified immunity analysis.

The particular situation Trump describes with respect to the night of July 12, 2014 is important for qualified immunity.  As the Supreme Court has stressed, "The 'dispositive inquiry,' we have said, 'is whether it would [have been] clear to a reasonable officer' in the [defendants'] position 'that [their] conduct was unlawful in the situation [they] confronted'."  *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014) ( reversing denial of qualified immunity on motion to dismiss).

When "*none of our precedents 'squarely governs' the facts here* . . . we cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have" acted as Sheriff Bell and Lt. Givens did. *Mullenix v. Luna*, 136 S. Ct. 305, 310 (2015) (reversing denial of qualified immunity, emphasis added).

Searching the precedents for decisions governing a situation like what Sheriff Bell and Lt. Givens confronted is the course the Supreme Court has instructed courts to take in analyzing qualified immunity.  When, "[n]o case law exists in this circuit – or elsewhere, as far as the Court can find – to clearly

37

establish a violation of Trump's particular constitutional right," dismissal on the

basis of qualified immunity is proper.  JA 197.[14]

The Supreme Court has rejected a freewheeling approach, such as Trump

advocates, to determining what is the "clearly established law."  As the Supreme

Court has stated in rejecting the approach of a court of appeals that "found clearly

established law lurking in the broad 'history and purposes of the Fourth

Amendment'," qualified immunity applies unless "existing precedent [has] placed

the statutory or constitutional question beyond debate."  *Al-Kidd*, 563 U.S. at 741,

742 (reversing denial of motion to dismiss on the basis of qualified immunity).  *See*

*also Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.*, 597 F.3d 163, 176

(4th Cir.) ("we must identify the right 'at a high level of particularity'"), *cert.*

*denied*, 562 U.S. 890 (2010); *McWaters v. Rick*, 54 F. App'x 379, 384 (4th Cir.

---

[14]The Supreme Court has stressed that courts have the discretion to grant qualified immunity on the ground that the alleged right was not clearly established, without the judiciary and the parties having to expend their resources on the sometimes "difficult questions" of whether a constitutional right has been violated. *Pearson v. Callahan*, 555 U.S. at 227, 236-41; *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) ("[t]his approach comports with our usual reluctance to decide constitutional questions unnecessarily").

Trump does not even address the decisions the District Court points to as among those it considered in determining whether Sheriff Bell and Lt. Givens violated clearly established law in the circumstances alleged, JA 197, much less argue that what the District Court concluded from its analysis was somehow wrong.  Nor does Trump offer any decisions of its own even remotely like the circumstances it alleges in this action.

2002) (plaintiff "points to no cases which are factually analogous," reversing district court's denial of qualified immunity on Rule 12(b)(6) motion to dismiss).

"Ultimately, whatever can be said of the wisdom of [the officer's] choice, this Court's precedents do not place the conclusion that he acted unreasonably in these circumstances 'beyond debate'," and qualified immunity therefore applies. *Mullenix v. Luna*, 136 S. Ct. at 311 (emphasis added), *quoting Al-Kidd*, 563 U.S. at 741. *See also Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.*, 597 F.3d at 176 ("while we disagree with the district court's interpretation of . . . our precedents, we do not view the interpretation to have been unreasonable. '[I]f judges ... disagree on a constitutional question, it is unfair to subject [government officials] to money damages for picking the losing side of the controversy.' *Wilson*, 526 U.S. at 618, 119 S. Ct. 1692; *see Hogan v. Carter*, 85 F.3d 1113, 1116 n. 3 (4th Cir. 1996) (en banc)").[15]

---

[15] "In determining whether a [constitutional] right was clearly established at the time of the claimed violation, courts in this circuit ordinarily need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose" . . . see *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir.1998) (en banc) (A law is "clearly established" when "the law has been authoritatively decided by the Supreme Court, the appropriate United States Court of Appeals, or the highest court of the state" . . .).

*Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.*, 597 F.3d at 176.

Here, uniformed Sussex Sheriff's deputies were already working security at Trump's facility on nights when it was serving alcohol, at Trump's landlord's behest and under the supervision and at the direction of Sheriff Bell and Lt. Givens. Opening Brief 2. They made arrests on some of those nights. On the night of July 12, 2014, when Trump's management for the first time opened its doors to patrons under the drinking age while serving alcohol and nearly 200 people were still waiting to enter, Sheriff Bell directed the deputies to close it for the rest of the night. JA 71 (¶ 23), JA 84 (¶ 47).

Trump quibbles with the District Court's reference to the "history of criminal violations" associated with Trump, because neither Trump itself "nor its employees were charged with or convicted of any criminal violation." Opening Brief 42. Trump seeks to obscure the significance of the criminal history, including the multitude of arrests made by Sussex County deputies on Trump's premises by deputies working security, in the months leading up to July 12, the night Trump was going to allow underage patrons in for the first time while serving alcohol, and had hundreds of people still lined up to get in. JA 134-164.

In full uniform, the Sussex County deputies were the very visible and accountable presence working security at the Trump facility open to the public the night of July 12, 2014. Sheriff Bell expressed to Trump management that night that 18-year olds could not be monitored well enough in the large dark facility to

keep them from drinking, and that if they did and got in an accident, the community would be looking to blame Sheriff Bell.  JA 81 (¶ 45c, e), 83-84 (¶ 45n).

That reasonable officers in the shoes of Sheriff Bell, and Lt. Givens, could have viewed themselves as having particular public safety obligations in those circumstances to do what Sheriff Bell directed that night – even if in hindsight it is assumed they were mistaken – makes qualified immunity proper here.[16]

"[Q]ualified immunity is [also] appropriate if reasonable officers could disagree on the relevant issue[.]"  *Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs.*, 597 F.3d at 177, *quoting Swanson v. Powers*, 937 F.2d at 968.  *See also Korb v. Lehman*, 919 F.2d 243, 246-47 (4th Cir. 1990) ("[i]f there exists a

---

[16]"Preserving the public peace unquestionably is a legitimate law enforcement function."  *Karadi v. Jenkins*, 7 F. App'x 185, 193 (4th Cir. 2001). *See also Durney v. Doss*, 106 F. App'x 166, 169 (4th Cir. 2004) (law enforcement officers frequently engage in what "may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute"); *Hunsberger v. Wood*, 570 F.3d 546, 556 (4th Cir. 2009) ( that "the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, by itself, render the [law enforcement officer's conduct] unreasonable," *quoting Cady v. Dombrowski*, 413 U.S. 433, 447 (1973)).

The Fourth Amendment does not prohibit all seizures, but rather only "unreasonable" seizures.  U.S. Const. amend. IV.  While the District Court assumed the seizure was unreasonable, for purposes of the motion to dismiss, JA 197, it is respectfully submitted that Trump's allegations do not show that it was unreasonable, and that Trump's Fourth Amendment claim should be dismissed for that reason as well.

'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies"; "the question of immunity is independent of the merits of a plaintiff's claim, and may be decided in the early stages of litigation, even prior to discovery," affirming Rule 12(b)(6) dismissal on the basis of qualified immunity) (internal citation omitted)), *cert. denied*, 502 U.S. 808 (1991).

The District Court properly dismissed Trump's Fourth Amendment claim, on the basis of qualified immunity, and it is respectfully submitted that the dismissal should be affirmed.

## IV.    Dismissal Of Trump's Equal Protection Claim Was Not Error

As the District Court properly held, regardless of the equal protection theory Trump seeks to advance, Trump's claim fails because its allegations do not satisfy the core requirement of any equal protection claim -- that it was treated differently from *similarly situated* businesses.  JA 198.  The Equal Protection Clause "does not mean that persons in different circumstances cannot be treated differently under the law."  *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d at 818.[17]

Trump seeks to ignore, or turn on its head, the pleading burden Trump has as the plaintiff, even under the pleading standards prior to *Iqbal* and *Twombly*. "Dismissal of a complaint for failure to state facts supporting each of the elements

---

[17]Trump does not contend that it was a member of any suspect class.

42

of a claim is, of course, proper." *Iodice v. U.S. Dep't of Veterans Affairs*, 289 F.3d
270, 281 (4th Cir. 2002).

As this Court has stated, "the Supreme Court has brought to the forefront the
Federal Rules' requirements that permit courts to evaluate complaints early in the
process." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (affirming
dismissal on motion to dismiss, and noting the "policy that plaintiffs may proceed
into the litigation process only when their complaints are justified by both law and
fact").

Indeed, while alleging no facts showing similarity with any identifiable
group significant for equal protection purposes, but merely that they had the
permits that go with running a restaurant that can serve alcohol,[18] Trump's
pleadings amply supply numerous facts showing what sets it apart and makes
rational the law enforcement treatment it alleges it received – including *numerous*
arrests at Trump lounge during its short period of operation, virtually all occurring
between midnight and 4:00 a.m. (with several involving guns, including possession

---

[18]The businesses Trump lists include a Chinese food restaurant, two
barbecue restaurants, a Mexican food restaurant, three Italian food/ pizza
restaurants, a general merchandise store, and the well-known Virginia Diner family
restaurant in Wakefield.  JA110-111 ¶ 110.  With respect to the Young Men's
Social Club (which Trump's allegations show was also sent a letter increasing the
hourly rate for the deputies providing security), and the Empire Restaurant and
Lounge (which moved into the facility after Trump closed), Trump's allegations do
not show any disparate treatment of those similarly situated material to an equal
protection analysis.  JA 114 ¶ 118(c), 133-164.

43

of a firearm by a convicted felon, and possession of a stolen firearm, as well as many for disorderly conduct, and obstruction of justice, assault and battery, possession of marijuana, underage possession of alcohol, theft from a motor vehicle, probation violation, and assault on a law enforcement officer), hundreds of people still in line to get in on the one night Trump decided to open its doors to underage customers while serving alcohol, and a landlord that wanted "local deputies to perform security services for Trump on weekends and evenings Trump was open" as a lounge serving alcohol.  Opening Brief 2; JA 64 (¶ 7), 70 (¶¶ 17-19), 71(¶ 23), 79 (¶ 38), 84 (¶ 47), 134-164.

In the face of its own pleadings showing how different Trump was from those other business, Trump offers up nothing more than boilerplate, conclusory allegations that it was intentionally treated differently than others similarly situated without any rational relationship to a governmental objective.  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do'." *Ashcroft v. Iqbal*, 556 U.S. at 678 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  Conclusory allegations bereft of sufficient specific facts do not provide "the 'heft' to state a claim," *Iqbal*, 556 U.S. at 674.

Not only are Trump's allegations insufficient to state an Equal Protection claim, any such equal protection right certainly was not clearly established and Sheriff Bell and Lt. Givens are entitled to qualified immunity.  JA 199.  Trump

cryptically asserts that qualified immunity does not protect the Defendants here, citing *In re Allen*. Opening Brief 49. As the discussion above of *In re Allen*, 106 F.3d at 594, shows, as well as the other qualified immunity decisions cited herein, Trump's assertion is without merit.

Trump has failed to state a claim of violation of its equal protection rights, and Sheriff Bell and Lt. Givens are also protected by qualified immunity, and dismissal of Trump's Equal Protection claim should be affirmed.

## CONCLUSION

Based upon the foregoing and the record, Appellees Sheriff Bell and Lt. Givens respectfully submit that this Court should affirm the rulings of the District Court and the dismissal of this action, along with such other and further relief as is just.

## REQUEST FOR ORAL ARGUMENT

Appellees request the opportunity to present oral argument.

Respectfully submitted,

/s/ Carlene Booth Johnson
Carlene Booth Johnson
Perry Law Firm
A Professional Corporation
262 Chellowe Road
Dillwyn, Virginia 23936
(434) 983-5005
(434) 983-5021 (facsimile)
email: perrylawfirm@hughes.net

*Counsel for Appellee*
*Raymond R. Bell*


/s/ Leslie A. Winneberger
William F. Etherington
Leslie A. Winneberger
Beale, Davidson, Etherington & Morris, P.C.
701 E. Franklin Street, Suite 1200
Richmond, Virginia  23219-2503
(804) 788-1500
(804) 788-0135 (facsimile)
wetherington@bealelaw.com
lwinneberger@bealelaw.com

*Counsel for Appellee*
*Vincent B. Givens*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P.
        28.1(e)(2) or 32(a)(7)(B) because:

        [ X ] this brief contains [*11,398*] words, excluding the parts of the brief
        exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

        [    ] this brief uses a monospaced typeface and contains [*state the number
        of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
        32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P.
        32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        [ X ] this brief has been prepared in a proportionally spaced typeface using
        [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

        [    ] this brief has been prepared in a monospaced typeface using [*state
        name and version of word processing program*] with [*state number of
        characters per inch and name of type style*].


Dated: September 6, 2016                    /s/ Carlene Booth Johnson
                                            *Counsel for Appellee*
                                              *Raymond R. Bell*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 6th day of September, 2016, I caused this Brief

of Appellees to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Andrew T. Bodoh
> THOMAS H. ROBERTS & ASSOCIATES, PC
> 105 South 1st Street
> Richmond, Virginia 23219
> (804) 783-2000
>
> *Counsel for Appellant*

I further certify that on this 6th day of September, 2016, I caused the

required copy of the Brief of Appellees to be hand filed with the Clerk of the

Court.

/s/ Carlene Booth Johnson
*Counsel for Appellee*
  *Raymond R. Bell*
